IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| VIOLA H. BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:11cv462-MHT |
| | ) | (WO) |
| JACKSON HOSPITAL & CLINIC, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

Plaintiff Viola H. Banks brought this lawsuit against
defendant Jackson Hospital & Clinic, Inc., alleging race-
and age-based discrimination in violation of Title VII of
the Civil Rights Act of 1964, 42 U.S.C. §§ 1981a & 2000e
through 2000e-17, and the Age Discrimination in
Employment Act of 1967, 29 U.S.C. §§ 621-634.
Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343,
29 U.S.C. § 626(c), and 42 U.S.C. § 2000e-5(f)(3).  This
case is now before the court on the hospital's motion for
summary judgment.  For the reasons that follow, that
motion will be granted.

## I.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  <u>Matsushita Elec. Indus. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## II.

Banks, an African-American female was 57 years old when she applied to work at Jackson Hospital in the fall of 2009.  As a condition of her employment, Banks submitted to a drug test, which came back negative.  She was then hired, given a copy of the hospital's drug policy, and entrusted with, among other things, distributing medication to patients.

The hospital used Omnicell (an automated pharmacy inventory and tracking program) to monitor the distribution of medication to patients.  The Omnicell report for April 2010 indicated an usually high number of medication distributions under Banks's identification code.  To determine the cause of that spike, the hospital obtained a "Transactions by User Report" (TUR), which offered specific information about the name and quantity of each narcotic that Banks retrieved from the Omnicell cart, the date and time of each retrieval, and the name of the patient for whom the medication was intended.  The TUR was then compared to the various patients' medical charts in order to determine whether the medication Banks retrieved from the cart was actually administered.  That analysis uncovered numerous inconsistencies, including instances where Propoxyphene, a narcotic available under the trade names Darvon or Darvocet, was retrieved from the cart, but not administered to any patient, and times

3

when Banks failed to record the amount of Propoxyphene actually administered.

Although Banks insists that she was never told about these discrepancies, she offers absolutely no evidence that would undermine the reports offered by the hospital. Nor does Banks offer any evidence undermining the reasonableness of the hospital's assumption that she was taking Propoxyphene from the cart and either using it herself or dealing it to others.

When Banks was confronted about her potential drug use, she denied having a drug problem and informed Human Resources that she had a Darvocet prescription. Her supervisor, James Epperson, informed her that a "valid" prescription would shield her from a positive drug test and ordered her to undergo testing at an independent lab. Banks Decl. ¶ 10 (Doc. No. 36-1).

Banks's initial screen came back positive for Propoxyphene. The hospital's TUR report analysis had revealed four retrievals of Propoxyphene by Banks between

4

April 19 and May 3, 2010, where the corresponding patient's record suggested irregularities (three failures to document any distribution to a patient and a fourth time where the specific number of tablets administered was not recorded). An independent Medical Review Officer confirmed Banks's positive drug test.

There is no admissible evidence demonstrating that Banks ever provided a copy of a valid prescription to either her supervisor or the independent drug-testing facilities. Indeed, during her deposition, Banks readily admitted that any prescription she might have had for Darvocet "was old." Banks Dep. 162:2-3 (Doc. No. 25-1).

Banks was terminated in May 2010. Her position was filled by Dimple Patrick. Patrick, an African-American female, was 60 years old at the time she began work at the hospital.

### III.

Both Banks's race-discrimination claim and her age-discrimination claim are analyzed under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (applying McDonnell Douglas in the age-discrimination context); Crawford v. Carroll, 529 F.3d 961, 975-76 (11th Cir. 2008) (noting McDonnell Douglas's application in the race-discrimination context). Under McDonnell Douglas, Banks must first demonstrate a prima-facie case of discrimination. A prima-facie case requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358 (1977). A prima-facie case raises a presumption of illegal discrimination, Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981), and shifts the burden of production to the defendant who must

6

rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for its employment action. <u>Chapman</u>, 229 F.3d at 1024. If such a reason is given, the plaintiff must then produce evidence that the stated reason did not in fact motivate the adverse-employment action, but was rather a "pretext for discrimination." <u>Burdine</u>, 450 U.S. at 253. If the plaintiff fails to do so, summary judgment for the defendant is appropriate.


IV.

For purposes of resolving this motion for summary judgment, the court assumes, but does not find, that Banks has made out a prima-facie case of both race and age discrimination. That Banks tested positive for the precise narcotic disappearing from her Omnicell cart, thereby giving the hospital reason to believe she had stolen and then used illicit narcotics, is obviously a legitimate, non-discriminatory reason for her

termination.  See Pears v. Mobile County, 645 F. Supp. 2d
1062, 1090 (S.D. Ala. 2009) (Steele, J.) (finding that a
positive drug test is "unquestionably" a "legitimate
nondiscriminatory reason" for discharging an employee).
Banks does not argue otherwise.  Instead, she insists
that the stated justification was a mere pretext for
racial and age-based animus.  Banks's central argument on
this issue is that the hospital applied "a harsher
standard" when deciding her fate than it did to two
younger, white employees.  This argument is unpersuasive.

The policy in question states that an employee who
"receive[s] a confirmed positive test for the presence of
an ... unauthorized substance may be terminated from
employment."  Policy at 1 (Doc. No. 36-1).  Banks focuses
on the word "may" and insists that this "flexible
standard" was applied to two white women who either
admitted to using or tested positive for narcotics, but
were not terminated, while she "was judged under a
harsher standard that is not found in the [hospital's]

8

policies and procedures." Pl.'s Sup. Brief in Opp. to Def.'s Mot. for Summ. J. at 4 (Doc. No. 55). That argument mistakenly equates flexibility with leniency. The mere fact that Banks did not receive the lightest possible punishment does not mean that she was judged under a harsher standard than her peers were: the policy does not require clemency, it merely permits it. In this case, there is absolutely no evidence that the hospital's actions were motivated by anything other than what it perceived to be Banks's theft of illicit narcotics and subsequent positive drug test and the policy plainly states that termination is a proper punishment for such an offense.

The two so-called comparators--the younger, white employees who were not fired when their drug use surfaced--aren't comparable at all. When those two nurses were confronted about discrepancies in their medication distribution practices, they each admitted their misconduct, confirmed that they had a

9

substance-abuse problem, and consented to entering into a treatment program established and operated by the Alabama Board of Nursing to help nurses struggling with addiction reenter the profession. Admission to that program requires the nurse first to admit to his or her addiction. Darrington Aff. ¶ 5 (Doc. No. 58-1). Because Banks made no such concession, she did not qualify for the program. It is therefore unreasonable for her to complain about the hospital's failure to offer her rehabilitation in lieu of termination: her own actions precluded her participation in that program. See Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1186 (11th Cir. 1984) ("If an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown." (internal quotation marks and alterations omitted)).

In sum, Banks has offered no evidence tending to show that her termination was motivated (even in part) by either race or age. She has therefore failed to carry

10

her burden under <u>McDonnell Douglas</u> and the hospital is entitled to summary judgment on her discrimination claims.

**\* \* \***

For the foregoing reasons, summary judgment will be entered in favor of Jackson Hospital and against Banks. An appropriate judgment will be entered.

DONE, this the 27th day of June, 2012.


<u>    /s/ Myron H. Thompson    </u>
UNITED STATES DISTRICT JUDGE